UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAYA DOZIER,                                  Case No. 2:14-cv-12455
KRICKETT LUCKHARDT, and                       Honorable Laurie J. Michelson
MICHELLE MACKAY,                              Mag. Judge Michael J. Hluchaniuk

       Plaintiffs,

v.

JAMES K. HAVEMAN, in his official
capacity as Director of the Michigan
Department of Community Health; and
MAURA D. CORRIGAN, in her official
capacity as Director of the Michigan
Department of Human Services,

       Defendants.

---

## OPINION AND ORDER GRANTING IN PART
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [2]

     This case arises out of the State of Michigan's winding down of the Plan First! Family Planning Program, a Medicaid program that covered family-planning services, and the ramping up of the Healthy Michigan Plan, a Medicaid program that provides more comprehensive healthcare benefits. Plaintiffs Maya Dozier, Michelle Mackay, and Krickett Luckhardt allege that the Michigan Department of Community Health and the Michigan Department of Human Services ("the Departments") violated federal law by terminating the Plan First! program without first determining whether each Plan First! enrollee was eligible for another Medicaid program such as Healthy Michigan. Plaintiffs further allege that the notices the Departments sent to Plan First! enrollees informing them of the program's termination and its effect on their Medicaid eligibility lacked details required by the Medicaid Act, its implementing regulations, and the Due

Process Clause. Plaintiffs believe that the notices should have provided a detailed explanation for the Plan First! enrollee's ineligibility for other Medicaid programs such as Healthy Michigan. This, Plaintiffs assert, would have allowed the enrollee to make an informed decision about whether to appeal the Departments' Medicaid eligibility determination.

On June 23, 2014, just seven days before the Plan First! program expired, Plaintiffs filed this suit asking this Court to immediately certify a class of tens-of-thousands of Plan First! enrollees who had allegedly received inadequate pre-termination process, to order Defendants to provide that process, and to enjoin Defendants from terminating the proposed class members' Plan First! benefits until it could be finally determined whether Michigan's phase out of Plan First! complied with federal law. The Court promptly conferred with all counsel and a stipulated order ensued. (*See* Dkt. 17, Stipulated Order.) Under that order, the Departments agreed to extend Plan First! benefits pending this Court's decision on Plaintiffs' preliminary-injunction motion. (*Id.*)

Pending before the Court is Plaintiffs' motion for class certification and Plaintiffs' motion for preliminary relief on behalf of their proposed class. (Dkt. 2, Mot. for Class Cert.; Dkt. 3, Mot. for Prelim. Inj.) Shortly after these motions were filed, and before this Court had an opportunity to decide them, this case took a significant turn: the Departments enrolled each of Dozier, Luckhardt, and Mackay in Healthy Michigan. Plaintiffs will thus continue to receive the Medicaid coverage they sought regardless of how this case ends. Additional former Plan First! enrollees sought to intervene as class representatives, but the Departments subsequently enrolled them in Healthy Michigan too. Nonetheless, having carefully considered the issue of mootness and the effect of Plaintiffs' coverage on the Federal Rule of Civil Procedure 23 requirements for

2

class certification, this Court will grant in part Plaintiffs' motion to certify the class. By separate opinion an order, the Court will grant Plaintiffs' motion for preliminary relief.[1]

## I.

### A.

Three Michigan Medicaid programs are relevant to this case: traditional Medicaid, a now-terminated waiver program known as Plan First! Family Planning Services, and a waiver program known as the Healthy Michigan Plan. The following brief description of each provides the background necessary to understand Plaintiffs' class-action allegations.

In 1965, Congress established Medicaid "to provide federal and state funding of medical care for individuals who cannot afford to cover their own medical costs." *Hughes v. McCarthy*, 734 F.3d 473, 475 (6th Cir. 2013). Prior to the program's recent expansion under the Patient Protection and Affordable Care Act, Medicaid was primarily available to certain categories of people: pregnant women, children, needy families, the blind, the elderly, and the disabled. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, --- U.S. ---, 132 S. Ct. 2566, 2581–82, 2601, 183 L. Ed. 2d 450 (2012) (citing 42 U.S.C. § 1396a(a)(10)). Medicaid covers a number healthcare expenses for eligible individuals, including hospital, physician, and family-planning services. *See* Medicaid.gov, Medicaid Benefits, http://goo.gl/0l7Ct (last visited July 25, 2014). Until earlier this year, Michigan residents seeking Medicaid completed a comprehensive assistance form, DHS-1171. (Dkt. 19, Defs.' Resp. to Mot. for Class Cert. Ex. 2, Roderick Aff. ¶ 5.)

In 2004, Michigan requested a waiver from the Center for Medicare & Medicaid Services to operate an optional Medicaid program: the Plan First! Family Planning Program. (Dkt. 3, Pls.'

---

[1] This order issues several months after Plaintiffs filed their motion for class certification and preliminary relief because the parties were engaged in extensive settlement discussions. Those efforts did not result in settlement.

Mot. for Prelim. Inj. Ex. C at Pg ID 273–89.) CMS approved the Departments' request and enrollment began in 2006. (*See id.* Pg ID 269–71.) Plan First! provided family-planning services such as contraceptives and physical examinations for reproductive health to women who were not eligible under any other Medicaid category and were between 19 and 44 years of age and had income below 185% of the federal poverty level. (*Id.* at Pg ID 269.) Prior to January 25, 2014, women applied for Plan First! by completing either the DHS-1171 comprehensive assistance form or a less comprehensive application specific to Plan First!. (Roderick Aff. ¶ 5.) "Because eligibility for Plan First! required, in part, that applicants not otherwise be eligible for Medicaid, the Plan First! application did not request extensive tax or other information required to determine eligibility for other Medicaid categories." (Defs.' Resp. to Mot. for Prelim. Inj. at 4; *see also* Roderick Aff. ¶ 3.)

Beginning in January 2014, the Affordable Care Act effected a number of changes to the Medicaid program. For one, Medicaid was expanded to cover adults under the age of 65 with incomes at or below 133% of the federal poverty level. *See* 42 U.S.C. § 1396a(a)(10)(A)(i)(VIII); *Nat'l Fed'n of Indep. Bus.*, 132 S. Ct. at 2582, 2601. "In Michigan, this expanded coverage was implemented as [Healthy Michigan]." (Defs.' Resp. to Mot. for Prelim. Inj. at 4; *see also* Dkt. 1, Exs. to Compl. Ex. D, CMS Approval of Health Michigan Plan.) Unlike Plan First!, Healthy Michigan is a comprehensive medical plan covering primary-care visits, inpatient and outpatient hospital visits, and prescription medications—as well as family-planning services. Michigan.gov, Healthy Michigan Plan Handbook, *available at* http://goo.gl/BQYcPt (last visited July 27, 2014). For another, the Affordable Care Act required states to begin determining an individual's financial eligibility for Medicaid using a Modified Adjusted Gross Income calculation. Department of Health and Human Services, *MAGI:Medicaid*

4

*and CHIP's New Eligibility Standards*, available at http://goo.gl/DJQ9TR (last visited Aug. 29, 2014). In accord with these changes to Medicaid, as of January 25, 2014, Michigan residents interested in Medicaid were required to complete a new, Medicaid-only application, DCH-1426, instead of the comprehensive assistance form. (*See* Roderick Aff. ¶ 5.)

On April 1, 2014, Healthy Michigan opened to new enrollees. (Defs.' Resp. to Mot. for Class Cert. at 1.) Additionally, as of that date, the individual mandate of the Affordable Care Act required people making more than 133% of federal poverty levels to sign up for minimum essential healthcare coverage. (Defs.' Resp. to Mot. for Prelim. Inj. at 5 (citing 26 U.S.C. § 5000A).) Given the joint operation of Healthy Michigan and the individual mandate, the Departments concluded that Plan First! would no longer be necessary:

> As a result of the expanded coverage available under the ACA, which includes family-planning services to [Healthy Michigan] recipients, the Plan First! program was no longer necessary, as the majority of the Plan First! population potentially would be eligible for this more comprehensive health coverage. Furthermore, Plan First! recipients above 133% of the federal poverty level (FPL) that were not eligible for [Healthy Michigan] were required under the ACA's individual mandate to sign up for minimum essential healthcare coverage by the end of open enrollment on March 31, 2014. 26 U.S.C. § 5000A.

(Defs.' Resp. to Mot. for Prelim. Inj. at 5; Dkt. 20, Asman Aff. ¶ 5.)

## B.

In preparing to phase out the Plan First! program, the Departments, although they maintain that federal law did not require them to do so, conducted an ex parte review of some, but not nearly all, of the Plan First! enrollees to determine if they could be placed in another Medicaid program. (Defs.' Resp. to Mot. for Class Cert. at 1–2.) Simply stated, the Departments evaluated only those Plan First! enrollees who had completed either the comprehensive assistance form or the successor Medicaid-only form; the Departments did not reevaluate those who had completed only the Plan First! application. (*See id.* at 2–4, 10.)

5

Less simply stated, the Departments describe their processing of Plan First! enrollees in terms of "groups." According to Defendants, "Group A" consists of those enrollees who applied for Plan First! before January 25, 2014 using the Plan First! application. (Defs.' Resp. to Mot. for Class Cert. Ex. 1, Plan First! Group Definitions ¶ 1; Roderick Aff. ¶ 3.) At oral argument, Defendants informed the Court that Group A consisted of approximately 32,000 Plan First! enrollees.[2] "Group B" are those enrollees who applied for Plan First! after January 25, 2014 using either the comprehensive assistance application or the Medicaid-only application. (Plan First! Group Definitions ¶ 2; Roderick Aff. ¶ 4.) "Group C" consists of Plan First! enrollees who had an "active Medicaid case" prior to January 25, 2014, but a subsequent change in circumstances resulted in the participant's placement in Plan First!. (Roderick Aff. ¶ 6; Plan First! Group Definitions ¶ 3.) As of April 28, 2014, Groups B and C consisted of 42,184 Plan First! enrollees. (Roderick Aff. ¶ 10.) Because the women in these two groups had completed full Medicaid applications, the Departments reprocessed these individuals to determine if they would

---

[2] Defendants were able to inform the Court that 3,306 women from Group A who applied for more comprehensive Medicaid coverage using the Medicaid-only application were denied enrollment due to a "computer issue." (Defs.' Resp. to Mot. for Class Cert. at 19.) The Departments have or will reprocess those subjected to this computer glitch for Medicaid eligibility. The Departments partition those subject to the computer issue into two smaller groups based on whether they applied before or after Healthy Michigan became available. (*See* Roderick Aff. ¶¶ 12–13.) Group Z is comprised of 1,119 women that applied for Medicaid coverage between January 26, 2014 and March 31, 2014, and Group X is comprised of 2,187 women that applied for Medicaid coverage between April 1, 2014 and May 29, 2014. (*Id.* ¶ 13.) Following a June 12, 2014 reprocessing of those in Group X, 938 women were moved to Healthy Michigan, 25 to another Medicaid category, 782 were denied any Medicaid coverage, and 397 needed further review. (*Id.* ¶ 16.) "Subsequently, 735 of the 782 [who were denied coverage] have since been re-opened for [Healthy Michigan] or other Medicaid coverage." (*Id.* ¶ 17.) Group Z, however, "has not yet been fully reprocessed due to open questions regarding eligibility for [Healthy Michigan], or other then-existing Medicaid categories, based on the application dates." (*Id.* ¶ 18.) The Departments, however, intend to reprocess those in Group Z. (Defs.' Resp. to Mot. for Class Cert. at 13 ("[T]he actual number of Plan First! enrollees that have not been reprocessed is 1,119, and the Departments fully intend to reprocess them for Medicaid eligibility once certain issues are resolved.").)

be eligible for Healthy Michigan (or any other Medicaid program). (*Id.* ¶¶ 7–10.) This resulted in about half of those in Groups B and C, 21,782, being placed in Healthy Michigan. (*Id.* ¶ 10.) Another 2,196 were approved for a different Medicaid program. (*Id.*) Of the 18,206 others in Groups B and C, 13,369 remained in Plan First! while 4,837 either were "denied coverage for any open Medicaid category or waiver project" (including Plan First!) or are "awaiting further review." (*Id.*) On June 7, 2014, "another reprocessing of the enrollees in Groups B and C was completed to determine if any had become eligible for [Healthy Michigan] or other Medicaid category." (*Id.* ¶ 15.) Defendants have not informed the Court how many Plan First! enrollees were moved to another Medicaid program after this second reprocessing.

All of this is consistent with this Court's simpler description: the Departments have already evaluated, or intend to evaluate, for Healthy Michigan (and other Medicaid programs) every Plan First! enrollee who submitted either a comprehensive assistance application or Medicaid-only application. (*See* Defs.' Resp. to Mot. for Class Cert. at 12 ("And, even though they were not required to so, Defendants did conduct a pre-termination eligibility review for those Plan First! enrollees that the Departments had enough information to determine eligibility for other programs."); *see also id.* at 13, 15.) As for those in Group A, the Departments do not intend to perform an ex parte review of those individuals because the Plan First! application "did not include or request certain tax related information, household composition, or require verification of income." (Defs.' Resp. to Mot. for Class Cert. at 10; *see also id.* at 4 ("[T]hose in Group A cannot be reviewed at this time. Group A has not reapplied for Medicaid coverage, and the Plan First! only application they previously submitted does not provide sufficient information to determine eligibility for an open Medicaid category such as the [Healthy Michigan program].").)

7

After the second reprocessing of those in Groups B and C, on June 7, 2014, the Departments sent all women still enrolled in Plan First! a "Health Care Coverage Determination Notice" ("June 7 Notices"). (Roderick Aff. ¶ 15.) Some June 7 Notices informed the enrollee that their Medicaid coverage was ending, others that the recipient had been approved for different Medicaid coverage, and still others requested verifying information. (*See id.*)

## C.

Plaintiffs Dozier, Luckhardt, and Mackay each received June 7 Notices. Dozier's stated that she was approved for Medicaid—but with a $395 monthly deductible. (Dkt 1, Exs. to Compl. Ex. A, Dozier's June 7 Notice.) Luckhardt and Mackay's notices stated that they were not eligible for Medicaid. (Exs. to Compl. Ex. B, Luckhardt's June 7 Notice; Exs. to Compl. Ex. C, Mackay's June 7 Notice.) Although specifically noting that they were ineligible for the traditional Medicaid categories, neither Luckhardt's nor Mackay's notice mentioned Healthy Michigan. (*See id.*) All three notices stated the following:

> You are receiving this notice because you are enrolled in the Plan First! family planning program. This program will end June 30, 2014. The ending of the Plan First! program affects every woman in the program. Federal law does not require a fair hearing for this change. You may apply for health care coverage at www.michigan.gov/mibridges.

(Exs. to Compl. Exs. A, B, C.)

## D.

Soon after receiving the June 7 Notices, on June 23, 2014, Dozier, Luckhardt, and Mackay filed this lawsuit. Each asserts she was eligible for Healthy Michigan and each claims that Defendants violated federal law by not determining her eligibility for that Medicaid program (and others) before the Plan First! program ended. (Dkt. 5 Ex. A, Compl. ¶¶ 1–3, 54–56, 76–78,

98–100, 144–45.) Plaintiffs also allege that the Departments violated federal law by failing to provide them with adequate Medicaid determination notices. (Compl. ¶¶ 146–49.)

> Dozier, Luckhardt, and Mackay seek to represent the following class of individuals:
>
> all "Plan First!" Medicaid recipients who are eligible for Medicaid under other eligibility categories and have been notified that their health coverage is being denied/closed or "approved" with a deductible that must be met before coverage is effective, effective July 1, 2014, without first being fully evaluated for eligibility under other Medicaid eligibility categories, and without being provided a constitutionally adequate pre-termination notice and opportunity for a hearing concerning their ongoing eligibility for Medicaid coverage.

(Compl. ¶ 26; Pl.'s Mot. for Class Cert. at 1.)

Plaintiffs have brought three causes of action on behalf of their proposed class. First, Plaintiffs claim that Defendants violated the Medicaid Act, 42 U.S.C. § 1396a(a)(8), and its implementing regulations when they terminated Plan First! coverage without first determining whether each Plan First! enrollee was eligible for other Medicaid categories such as Healthy Michigan. (*See* Dkt. 5 Ex A, Compl. ¶¶ 144–45.) Second, Plaintiffs assert that Defendants violated the Fourteenth Amendment by ending Plan First! without providing enrollees with notice required by the Due Process Clause. (Compl. ¶¶ 146–47.) Third, Plaintiffs claim that Defendants violated the Medicaid Act, 42 U.S.C. § 1396a(a)(3), by terminating Plan First! without providing notice required by that statute and its implementing regulations. (*See* Compl. ¶¶ 148–49.) Based on these claims, Plaintiffs ask this Court to preliminarily and permanently enjoin Defendants from "terminating the named Plaintiffs' and proposed Class members' coverage under the Plan First! Medicaid program without first evaluating their eligibility under all other Medicaid categories" or without "providing them with a meaningful notice and opportunity to be heard regarding their continued Medicaid eligibility under all categories." (Compl. ¶¶ 150.F–G.)

**E.**

After this lawsuit was filed, but before this Court had an opportunity to address the pending motions for class certification and preliminary injunctive relief, the Departments reevaluated named Plaintiffs Dozier, Luckhardt, and Mackay for Healthy Michigan. (*See generally*, Defs.' Resp. to Mot. for Class Cert. Ex. 3, Best Aff.) The Departments enrolled each Plaintiff in that program.

Dozier submitted her Medicaid-only application on April 4, 2014. (Best Aff. ¶¶ 2, 4.) The Departments, however, did not then enroll Dozier in Healthy Michigan. Defendants explain: "[f]ollowing the filing of this lawsuit, manual review identified problems with [Dozier's] application that prevented her from being determined eligible for the Healthy Michigan Plan or any other Medicaid category." (Best Aff. ¶ 6.) Using income information from the declaration Dozier filed in support of this lawsuit, the Department of Human Services approved Dozier for Healthy Michigan effective April 1, 2014. (Best. Aff. ¶¶ 6–11.)

Luckhardt's enrollment in Healthy Michigan followed a similar course. She submitted her Medicaid-only application on May 14, 2014. (*See* Best Aff. ¶¶ 2, 17.) The Department of Human Services did not then enroll Luckhardt in Healthy Michigan because it could not verify her income. (Best. Aff. ¶ 19–21.) After this suit was filed, the Department of Human Services "found that [Luckhardt] no longer claimed receiving the previously reported family/friend income." (Best Aff. ¶¶ 22–24.) Luckhardt was enrolled in Healthy Michigan effective May 1, 2014. (*Id.*)

Mackay submitted her Medicaid-only application on April 29, 2014. (*See* Best. Aff. ¶¶ 12.) She was not enrolled because her application did not request coverage for her children, which, the Departments say, is a requirement for qualifying for Healthy Michigan. (*See* Best.

Aff. ¶ 14.) As with Dozier and Luckhardt, following the filing of this lawsuit, the Department of Human Services enrolled Mackay in Healthy Michigan. (Best. Aff. ¶ 16.)

On July 21, 2014, Samantha Blackwell and Monaye Ervin, former Plan First! enrollees who received the June 7 Notice, sought to intervene in this case as class representatives. (Dkt. 26.) Days later, at the motion hearing on July 24, 2014, counsel for Defendants indicated that the Departments had enrolled both Blackwell and Ervin in Healthy Michigan. After oral argument, Sheana Miller and Beverly Kimberly, also similarly situated to Plaintiffs, sought to intervene as class representatives. (Dkt. 29.) Within a week's time, the Departments had also enrolled them in Healthy Michigan. (*See* Dkt. 31.)

## II.

As discussed below, Dozier's, Luckhardt's, and Mackay's individual, substantive claims are moot now that they have been enrolled in Healthy Michigan.[3] But given that Defendants unilaterally mooted their claims after they moved for class certification, that others have (twice) attempted to intervene as class representatives only to have their claims mooted, and the high

---

[3] Class representatives have two types of claims: (1) substantive claims not different from those a plaintiff brings in a non-class-action lawsuit and (2) a procedural claim based on the representatives' interest in representing the class. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 401–04 (1980). In *Geraghty*, the named plaintiff, Geraghty, filed a class-action complaint challenging the constitutionality of certain parole guidelines. *Id.* at 390, 393. After the district court denied Geraghty's request for class certification and granted summary judgment for the defendants, Geraghty appealed to the Third Circuit. *Id.* at 393-94. While Geraghty's appeal was pending, he was released from prison. *Id.* at 394. The defendants thus claimed that the appeal had to be dismissed as moot. *Id.* The Supreme Court disagreed: "[A]n action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied. The proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined." *Geraghty*, 445 U.S. at 403–04. Some courts have hinted that an extension of the reasoning of *Geraghty* might save a class action from falling moot at the district-court level. *See Wilkerson v. Bowen*, 828 F.2d 117, 121 (3d Cir. 1987). Because the Court applies a different mootness exception, it has no need to, and does not, apply *Geraghty*'s exception. It follows that the Court does not opine on the viability of Dozier's, Mackay's, or Luckhardt's procedural right to represent the class.

likelihood that still others are willing to serve as representatives, the Court concludes that Plaintiffs' class-action claims remain viable.

## A.

"[M]ootness has two aspects: 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969)). The latter requirement, the "personal stake" requirement, *Geraghty*, 445 U.S. at 496, is a corollary to the rule that federal courts have no power to "decide questions that cannot affect the rights of the litigants in the case before them," *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Thus, if developments during the course of litigation eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot. *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 567 (6th Cir. 2013).

Dozier's, Luckhardt's, and Mackay's individual, substantive claims are moot because they no longer have a personal stake in how those claims are resolved. Even if the case ends in Defendants' favor, Dozier, Luckhardt, and Mackay will still have (1) retained their Plan First! benefits up through their enrollment in Healthy Michigan, (2) received an ex parte review for other Medicaid programs (including Healthy Michigan), and (3) been notified of their approval for Healthy Michigan. (*See generally*, Best Aff.) And Dozier, Luckhardt, and Mackay will continue to receive Medicaid coverage under Healthy Michigan without an injunction from this Court. Plaintiffs' request for an order directing Defendants to review their eligibility for other Medicaid programs and to refrain from terminating their Plan First! coverage before providing adequate notice and an opportunity to be heard is therefore moot. (*See* Compl. ¶¶ 150.F, G.)

Plaintiffs have also asked this Court to declare unlawful Defendants' failure to provide them with adequate process prior to terminating their Plan First! coverage. (Compl. ¶¶ 150.C–E.) But a declaration that Defendants wronged Dozier, Luckhardt, and Mackay during the phase out of Plan First! would now be advisory as to them: Plaintiffs have not sufficiently evidenced that, in the future, Defendants are likely to terminate their Medicaid benefits in a similar manner. *See Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 548–49 (10th Cir. 1997) ("As the law requires that Ms. Bauchman's legal interest in the outcome of this appeal be greater than the mere satisfaction of a declaration she was wronged, we deem her claims for declaratory relief moot and dismiss her appeal as to those claims."); *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) ("[A] plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured [by the defendant] in the future." (internal quotation marks omitted) (second alteration in original)).

Those that seek to intervene as class representatives (Blackwell, Ervin, Miller, and Kimberly) attempt to fill this void. They argue that Plaintiffs' declaratory judgment claims are not moot because Defendants hold steadfast to their position that they are not required to review a Medicaid participant's eligibility for other Medicaid programs when they terminate a voluntary Medicaid program. (Dkt. 29, Supp. Mot. to Intervene at 12–13.) They point out that Healthy Michigan is, like Plan First! was, a voluntary Medicaid program. (*Id.*) In other words, they rely on the capable-of-repetition-yet-evading-review exception to the mootness doctrine. *See Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) ("[The capable-of-repetition-yet-evading-review exception] applies when (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation

that the same complaining party would be subjected to the same action again." (internal quotation marks omitted)).

The proposed intervenors' argument is built upon speculation. There is no evidence that Healthy Michigan, a program in its infancy, is near its end. And Defendants' current legal position is not necessarily indicative of their future actions—the Departments may have reasons for performing an ex parte review of enrollees of Healthy Michigan when (and if) that program ends unrelated to what the law (or this Court) demands. Indeed, if the Court were to accept putative intervenor's argument, any of the 300,000 enrollees in Healthy Michigan (or any other voluntary Medicaid program) could seek a declaratory judgment without any indication that his or her Medicaid benefits were even in the slightest jeopardy. This is not the law. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (providing that Article III requires that "[t]he injury or threat of injury must be both real and immediate, not conjectural or hypothetical"); *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) ("In the context of a declaratory judgment action . . . [t]he plaintiff must allege and/or demonstrate actual present harm or a significant possibility of future harm." (internal quotation marks omitted)).

A request for monetary relief, even a nominal amount, might have saved Plaintiffs' claims from mootness. *See Fox*, 42 F.3d at 141. But Dozier, Luckhardt, and Mackay (for good reason, *see S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)) have not sought damages against state officials sued in their official capacity. (*See* Compl. ¶ 150.) While Plaintiffs have asked for costs and reasonable attorneys' fees under 42 U.S.C. § 1988, they cite no authority that a costs-and-fees request keeps an otherwise moot case alive. And the law appears to be to the contrary. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("An order vacating the judgment on grounds of mootness would deprive Continental of its claim for

attorney's fees under 42 U.S.C. § 1988 (assuming, arguendo, it would have such a claim), because such fees are available only to a party that 'prevails' by winning the relief it seeks. This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." (internal citations omitted)); *Demis v. Sniezek*, 558 F.3d 508, 513 (6th Cir. 2009) ("Demis' request for attorney's fees, contrary to counsel's suggestion at argument, is not enough to save his petition from being dismissed as moot because the courts have no authority to award Demis costs and fees as the 'prevailing party' when the underlying action has been dismissed as moot." (citing *Lewis*, 494 U.S. at 480)).

The Court therefore concludes that, in light of Defendants' (post-litigation) review of Plaintiffs' applications for Healthy Michigan, and Plaintiffs' current enrollment in that program, Dozier's, Luckhardt's, and Mackay's individual, substantive claims are moot. Those claims will thus be dismissed for lack of subject-matter jurisdiction.

## B.

The Court must next address the impact on the class-action complaint. Some case law suggests that when the named plaintiffs' claims become moot prior to class certification, the entire action is moot: "[A putative class action] ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved." *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001); *accord Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class."); *Inmates of Lincoln Intake & Det. Facility by Windes v. Boosalis*, 705 F.2d 1021, 1023 (8th Cir. 1983) ("A named plaintiff must have a personal stake in the outcome of the case at the time the district court rules

15

on class certification in order to prevent mootness of the action."). Indeed, in *Brunet v. City of Columbus*, 1 F.3d 390 (6th Cir. 1993), our Court of Appeals stated:

> *Once a class is certified*, the mooting of the named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists. Where, on the other hand, the named plaintiff's claim becomes moot *before* certification, dismissal of the action is required.

*Brunet*, 1 F.3d at 399 (internal citation omitted). The logic behind this rule is that absent class certification, the proposed class is still only proposed, and, therefore, the mooting of all the named plaintiffs' claims is no different than the mooting of a plaintiff's claims in a non-class-action lawsuit. *See Cruz*, 252 F.3d at 534 ("Only when a class is certified does the class acquire a legal status independent of the interest asserted by the named plaintiffs . . . .").

But in accepting this logic, the Sixth Circuit also recognized that "special mootness rules exist for class actions." *Brunet*, 1 F.3d at 399. Especially relevant here is the rule derived from the relevant case law that if a defendant has unilaterally mooted the named plaintiffs' claims while their motion for class certification is pending, and has mooted the claims of those that seek to intervene and serve as surrogate representatives, and there are still other proposed class members willing to serve as surrogates, the case is not moot.

The seeds of this rule are found in *Sosna v. Iowa*, 419 U.S. 393 (1975). Sosna had filed suit on behalf of herself and a class of individuals challenging as unconstitutional Iowa's one-year residency requirement for invoking the state's divorce jurisdiction. 419 U.S. at 396–97. The district court had certified the class, but, by the time the Supreme Court could decide Sosna's appeal, she had been an Iowa resident for over a year. *Id.* at 398–99. The Supreme Court observed that if Sosna had merely sued on her own behalf, the fact that she satisfied the one-year residency requirement and had obtained a divorce would require dismissal for mootness. *Id.* at

16

399. But, the Court explained, "[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant." *Id.* Most significant for present purposes is that the Supreme Court noted a possible exception to the rule that there must be a live case or controversy "at the time the class action is certified by the District Court":

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Sosna*, 419 U.S. at 403 n.11.

*Sosna*'s hypothetical exception became a reality in *Gerstein v. Pugh*, 420 U.S. 103 (1975). Pugh and Henderson had sued Gerstein, the Florida State Attorney, on behalf of a class of pretrial detainees claiming that their detention without a judicial probable-cause determination was unconstitutional. *See* 420 U.S. at 106–07, 111. The record before the Supreme Court, however, did not clearly show that Pugh and Henderson were still pretrial detainees at the time the district court certified the class. *Id.* at 110 n.11. Although "[s]uch a showing ordinarily would be required to avoid mootness," the Supreme Court applied the exception alluded to in *Sosna*: "The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class." *Id.* at 110 n.11.

The *Sosna-Gerstein* exception was extended in *Susman v. Lincoln Am. Corp.*, 587 F.2d 866 (7th Cir. 1978). There, the district court had dismissed as moot two suits (consolidated as *Susman* on appeal) because the defendants had offered the named plaintiffs in both cases all that

they could have recovered. *Id.* at 868. The lower court's dismissals were despite that the plaintiffs had refused the offers and that there were pending motions for class certification at the time of dismissal. *Id.* The Seventh Circuit acknowledged that at the "critical moment" when the named plaintiffs' claims became moot, the district court had not certified the proposed classes. *Id.* at 869. Nonetheless, said the Seventh Circuit, "Courts have consistently recognized that unnamed class members have an interest in a lawsuit even before a Rule 23 determination is made that a class action may be maintained on their behalf." *Id.* While recognizing that *Gerstein* had only applied the relation-back exception "where the underlying factual situation naturally changes so rapidly that the courts cannot keep up," the Seventh Circuit provided that "necessity compell[ed] a similar result" in the two consolidated cases before it:

> If the class action device is to work, the courts must have a reasonable opportunity to consider and decide a motion for certification. If a tender made to the individual plaintiff while the motion for certification is pending could prevent the courts from ever reaching the class action issues, that opportunity is at the mercy of a defendant, even in cases where a class action would be most clearly appropriate.

*Susman*, 587 F.2d at 870. The Court thus held, "when a motion for class certification has been pursued with reasonable diligence and is then pending before the district court, a case does not become moot merely because of the tender to the named plaintiffs of their individual money damages." *Id.* at 870; *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) ("[W]e see no reason to restrict application of the relation-back doctrine only to cases involving *inherently* transitory claims. Where, as here, a defendant seeks to 'buy off' the small individual claims of the named plaintiffs, the analogous claims of the class—though not *inherently* transitory—become no less transitory than inherently transitory claims."); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249 (10th Cir. 2011) ("[W]e conclude that a nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected

offer of judgment for statutory damages and costs made to a named plaintiff does not render the [class action] moot under Article III"); *Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004) ("Although Weiss's claims here are not inherently transitory as a result of being time sensitive, they are acutely susceptible to mootness in light of defendants' tactic of picking off lead plaintiffs with a Rule 68 offer to avoid a class action." (citation omitted) (internal quotation marks omitted)); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030 (5th Cir. 1981) (reasoning that even though the named plaintiffs had not presented claims that by their very nature were so transitory that a court could not timely decide class certification, "the result should be no different when the defendants have the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification.").

The Sixth Circuit, although not explicitly saying so, has applied the relation-back exception while also clarifying its holding in *Brunet*. In *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620 (6th Cir. 2005), the defendants mooted the named plaintiffs' claims through a Federal Rule of Civil Procedure 68 offer of judgment while a magistrate judge's recommendation to certify the class was pending review. *Id.* at 625. The Court held that the case was not moot despite that a class had not yet been certified by the district judge. *Id.* In so holding, the Sixth Circuit clarified the scope of its earlier decision in *Brunet*:

> Despite [stating that "where the named plaintiff's claim becomes moot before certification, dismissal of the action is required"], the *Brunet* court in fact distinguished between cases that are settled before a motion for class certification is filed and cases where a settlement offer is made to a named plaintiff while a motion for class certification is pending. . . . Although *Brunet* did not involve a Rule 68 offer of judgment or the [Fair Debt Collection Practices Act], the court suggested that it would be inappropriate to hold that a case was mooted by a settlement offer made to a named plaintiff when a motion for class certification was pending.

*Carroll*, 399 F.3d at 625.

And in *Blankenship v. Secretary of Health, Education and Welfare*, 587 F.2d 329 (6th Cir. 1978), the Sixth Circuit applied similar reasoning in a case where, as here, the named plaintiffs did not seek relief that the defendant could satisfy via a monetary payment. In *Blankenship*, the named plaintiffs sought to represent a class of individuals who experienced delays in obtaining a Social Security disability hearing. *Id.* at 331. But prior to the district court's certification of the class, "[a]ll of the named plaintiffs [had] received disability hearings." *Id.* at 332–33. The Sixth Circuit acknowledged that "the named plaintiffs can no longer complain that they have failed to receive a hearing, and any court-ordered relief to accelerate hearing procedures would have no effect on them." *Id.* at 333. Still, their claims "epitomize[d] the type of claim which continually evades review if it is declared moot merely because the defendants have voluntarily ceased the illegal practice complained of in the particular instance." *Id.* The Sixth Circuit noted that the defendants had the ability to "expedite processing for any plaintiffs named in a suit while continuing to allow long delays with respect to all other applicants," and so the "refusal to consider a class-wide remedy merely because individual class members no longer need relief would mean that no remedy could ever be provided for continuing abuses." *Id.* As such, "the class members retain[ed] a live interest in this case so that the class action should not be declared moot," and the class certification related back to the date of the filing of the complaint. *Id.* (citing *Sosna*, 419 U.S. at 402 n.11); *see also White v. Mathews*, 559 F.2d 852, 857 (2d Cir. 1977) (finding that class action seeking hearings before an administrative law judge was not moot despite that named plaintiff had received such a hearing prior to class certification; reasoning that if the certification decision did not relate back to before the named plaintiff's claim became moot, "the [Social Security Administration] could avoid judicial scrutiny of its

20

procedures by the simple expedient of granting hearings to plaintiffs who seek, but have not yet obtained, class certification").

The facts of this case fall within the rule outlined by the foregoing authorities. Only after Dozier, Luckhardt, and Mackay filed this lawsuit, and only after they moved for class certification, did the Departments again review their applications for Medicaid and approve them for Healthy Michigan. *Cf. Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1332 (D. Utah 2005) ("It appears that Regence has engaged in an attempt to moot Ms. Owen's claims by peremptorily providing her with the relief she sought. The agreement entered into with LDS Hospital appears to have been a result of this lawsuit and the threat of certification. The court certainly cannot state this definitively. Such 'motive' evidence is rarely clear. But the appearance in this case is enough under the flexibility of the mootness doctrine that the court believes that even if Ms. Owen's remaining claim is mooted, the motion for class certification should go forward.").

The Court also finds it significant that there appears to be no shortage of proposed class members who are willing to intervene in this case to serve as class representatives should that prove necessary. *See Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("[C]ourts . . . disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs."); *In re Nat'l Australia Bank Sec. Litig.*, No. 03 CIV.6537 BSJ, 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006) ("Defendants' claim that final dismissal is required on the ground that there is no live action into which a new plaintiff may be substituted or intervene, is belied by the great weight of authority. . . . These cases demonstrate that courts not only may, but *should*, respond to

21

the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative." (citations omitted) (internal quotation marks omitted)).

* * *

In sum, although Plaintiffs' individual claims are moot, they filed for class certification before their claims became moot, they did not voluntarily settle their claims with Defendants, Defendants are capable of mooting (and have mooted) the claims of two sets of surrogate representatives by quickly evaluating them for Healthy Michigan eligibility, and additional surrogate representatives are undoubtedly available to represent the class should that prove necessary. Given all of this, the Court finds that the proposed class action survives.

### III.

The Court must now determine whether class certification is warranted under the Federal Rules of Civil Procedure. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 405–06 (1980) ("Our conclusion that the controversy here is not moot does not automatically establish that the named plaintiff is entitled to continue litigating the interests of the class. '[I]t does shift the focus of examination from the elements of justiciability to the ability of the named representative to fairly and adequately protect the interests of the class. Rule 23(a).'" (quoting *Sosna v. Iowa*, 419 U.S. 393, 402 (1975)); *Reed v. Bowen*, 849 F.2d 1307, 1311, n.4 (10th Cir. 1988) (reiterating that "whether Fed. R. Civ. P. 23 requirements were satisfied requires a separate analysis from the question of mootness of the named plaintiff's claims.").

Plaintiffs must show that all four of the Rule 23(a) class-action prerequisites are satisfied and that their proposed class fits at least one Rule 23(b) category. *See Davis v. Cintas Corp.*, 717 F.3d 476, 484 (6th Cir. 2013). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

22

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). As for Rule 23(b), Plaintiffs say that their proposed class falls within subsection (2): that Defendants "[have] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2). (*See* Pl.'s Mot. for Class Cert. at 20–21.) Additionally, Rule 23 includes an implicit requirement that Plaintiffs have the burden of satisfying: "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). If Plaintiffs fail to satisfy any of these requirements, class certification is improper. *Davis*, 717 F.3d at 484.

In ruling on a motion for class certification, the Court must perform a "rigorous analysis." *Id.*; *see also Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."). But rigorous does not mean mechanical: the decision of whether to certify a class falls squarely in the district court's discretion. *See Davis v. Cintas Corp.*, 717 F.3d 476, 484 (6th Cir. 2013) ("Because a district court's class-certification decision calls for an exercise of judgment, our review is narrow." (internal quotation marks omitted) (alteration omitted)); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417 (6th

Cir. 2012) ("The district court's decision certifying the class is subject to a very limited review and will be reversed only upon a strong showing that the district court's decision was a clear abuse of discretion.").

## A.

"Before a court may certify a class pursuant to Rule 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (quoting 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)).

Plaintiffs propose the following class:

all "Plan First!" Medicaid recipients who are eligible for Medicaid under other eligibility categories and have been notified that their health coverage is being denied/closed or "approved" with a deductible that must be met before coverage is effective, effective July 1, 2014, without first being fully evaluated for eligibility under other Medicaid eligibility categories, and without being provided a constitutionally adequate pre-termination notice and opportunity for a hearing concerning their ongoing eligibility for Medicaid coverage.

(Dkt. 2, Mot. for Class Cert. at 1.) Although this class definition might satisfy a liberal application of the ascertainability standard, there is significant room for improvement. Accordingly, the Court will exercise its authority to *sua sponte* modify Plaintiffs' proposed class definition. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("[D]istrict courts have broad discretion to modify class definitions, so the district court's multiple amendments merely showed that the court took seriously its obligation to make appropriate adjustments to the class definition as the litigation progressed"); *Hendricks v. Total Quality Logistics, LLC*, 292 F.R.D. 529, 538 (S.D. Ohio 2013) ("Having reviewed the record, the Court is inclined to redefine and subdivide the proposed class for purposes of the class

24

certification analysis."); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 69 Fed. R. Serv. 3d 791 (M.D. Pa. 2007) ("In modifying the class definition, the Court notes it is not bound by Plaintiffs' proposed class definition and has broad discretion to redefine the class, whether upon motion or *sua sponte*."); Charles Alan Wright, Arthur R. Miller, et al., 7AA Fed. Prac. & Proc. Civ. § 1790 (3d ed. 2005) ("Of course, the court is not bound by plaintiff's complaint and should not dismiss the action simply because it misdefines the class or the issues when the court can correct the situation under Rule 23(c)(4) [now Rules 23(c)(4) and (5)].").

**1.**

Plaintiffs class definition is problematic in several ways.

First, Plaintiffs' definition requires some, and possibly considerable, individualized fact-finding. The proposed class includes only those "Medicaid recipients who are eligible for Medicaid under other eligibility categories." But whether an individual is eligible for a particular Medicaid category turns on the category's criteria and the individual's personal circumstances (e.g., the individual's Modified Adjusted Gross Income). Although the "need to review individual files to identify [class] members [is] not reason[] to deny class certification," *Young*, 693 F.3d at 539, the membership inquiry should not involve significant individualized fact-finding, *see Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) ("[I]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." (internal quotation marks omitted)); 1 William B. Rubenstein, *Newberg on Class Actions* § 3:3 at 164 (5th ed. 2011) ("Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry.").

Second, Plaintiffs' proposed class requires a merits determination on a central issue. The proposed class includes only those Plan First! enrollees who have not been "provided a constitutionally adequate pre-termination notice and opportunity for a hearing concerning their ongoing eligibility for Medicaid coverage." But "[t]he touchstone of ascertainability is whether the class is objectively defined, *so that it does not implicate the merits of the case* or call for individualized assessments to determine class membership." *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 391 (S.D. Ohio 2008) (emphasis added); *see also Young*, 693 F.3d at 538 ("For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." (internal quotation marks omitted)).

Third, Plaintiffs' proposed class, under their particular wording, does not cover all whom they seek to represent. At oral argument, Plaintiffs' counsel made clear that they sought relief for those Plan First! enrollees whom the Departments either did not review for other Medicaid categories, *or* did review, but provided deficient determination notices. (*See also* Dkt. 27, Pls.' Reply to Defs.' Resp. to Mot. for Class Cert. at 3 ("Plaintiffs' proposed Class definition and claims address not only Defendants' failure to fully evaluate eligibility, but also the failure to provide adequate notice and an opportunity to be heard when eligibility under all Medicaid categories is denied." (emphasis removed)). Yet, Plaintiffs' class definition is conjunctive: it includes only those Plan First! enrollees who received certain notices "without first being fully evaluated for eligibility under other Medicaid eligibility categories, *and* without being provided a constitutionally adequate pre-termination notice." (Mot. for Class Cert. at 1 (emphasis added).) In other words, Plaintiffs' proposed definition includes only Plan First! enrollees who both did not receive an ex parte review and did not receive constitutionally adequate notice.

26

**2.**

All of these deficiencies in Plaintiffs' class definition can be remedied while maintaining the essence of their definition: those "Plan First! Medicaid recipients who are harmed by Defendants' premature and unlawful termination of their Medicaid benefits without due process," (Pls.' Reply to Defs.' Resp. to Mot. for Class Cert. at 5). As such, the Court elects to evaluate the following class definition under Rule 23:

> All individuals to whom the Michigan Department of Human Services or the Michigan Department of Community Health sent a notice dated June 7, 2014, stating, (1) "You are receiving this notice because you are enrolled in the Plan First! family planning program. This program will end June 30, 2014" and (2) that, effective July 1, 2014, health coverage would be denied, closed, or approved with a deductible.

The Court's definition does not turn on an individualized determination of Medicaid eligibility. And it does not turn on a legal or merits determination. And the definition includes both Plan First! enrollees who did not receive an ex parte review (which Plaintiffs claim is required by law) and those who did receive an ex parte review but still received the June 7 Notice (which Plaintiffs claim is inadequate). Moreover, the redefined class clears the ascertainability hurdle: a person is a member of the class if she received a June 7 Notice providing that she was denied, closed, or covered with a deductible; otherwise not. Thus, the Court's modifications eliminate administration difficulties but maintain the essence of Plaintiffs' proposed definition.

**B.**

The Court turns next to Rule 23(a)(4), adequacy of representation, as that requirement is most directly implicated by this Court's conclusion that Plaintiffs' individual, substantive claims are moot.

27

**1.**

Indeed, mootness is the Defendants' sole argument regarding Rule 23(a)(4). (*See* Defs.' Resp. to Mot. for Class Cert. at 17–18; *see also* Dkt. 31, Defs.' Resp. to Mots. to Intervene at 6–8.) Defendants assert that the "named Plaintiffs are defective class representatives because they have already been approved for [Healthy Michigan Plan] coverage. Thus, they have not suffered any harm, their claims are moot, and they lack standing." (Defs.' Resp. to Mot. for Class Cert. at 17.) Defendants rely on *Gawry v. Countrywide Home Loans, Inc.*, 395 F. App'x 152 (6th Cir. 2010), in support of their mootness-automatically-means-inadequate-representation argument.

*Gawry* does not support Defendants' argument. True, the appellate panel stated that "'where . . . the named plaintiff's claim becomes moot *before* certification, dismissal of the action is required.'" 395 F. App'x at 155 (quoting *Brunet*, 1 F.3d at 399); *see also id.* at 160. But this statement derives directly from *Brunet*, and, as discussed, the Sixth Circuit has said that this language is not quite as broad as some would read it. *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005) ("Despite the broad language quoted above, [*Brunet*, 1 F.3d at 399,] the *Brunet* court in fact distinguished between cases that are settled before a motion for class certification is filed and cases where a settlement offer is made to a named plaintiff while a motion for class certification is pending."). Moreover, the holding of *Gawry* is narrower than the language Defendants rely upon. It was relevant to the Court that the plaintiffs' claims became moot before they had even moved for class certification. 395 F. App'x at 153 ("Because plaintiffs' claims became moot before they moved for class certification, we affirm the district court's judgment dismissing this action."); *see also id.* at 156. Here, Defendants rendered Plaintiffs' claims moot after Plaintiffs moved for class certification.

Still, Defendants' argument raises a valid concern—namely, whether a plaintiff whose individual claims are moot is adequate to represent a class of people whose claims are not moot. *See Mathis v. Bess*, 692 F. Supp. 248, 259 (S.D.N.Y. 1988) ("A plaintiff whose claims are moot can no longer claim to be a class member and cannot be deemed an adequate representative of the class."); *but see Wilkerson v. Bowen*, 828 F.2d 117, 121 (3d Cir. 1987) (providing that a "plaintiff [is not] automatically disqualified from being a class representative [where his claim is resolved while his class certification motion is pending;] the question still must be decided whether, all other factors being considered, the plaintiff can fairly and adequately represent the class and meet the other requirements of Fed. R. Civ. P. 23."). Indeed, in *Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d 701, 707 (6th Cir. 2009), the Sixth Circuit explained that even if the case could proceed because the class representatives' claims were not completely moot, the representatives would "face severe difficulties on the merits of the class certification issue":

> Due to the fact that the plaintiffs have settled and released all of their claims, it appears that they have little, if any, incentive to advocate on behalf of the putative class. Accordingly, it appears that the plaintiffs and the rest of the putative class members would not share the same interest in pursuing the litigation. If true, this would be fatal to class certification because Fed. R. Civ. P. 23(a)(4) requires that the named plaintiffs in a class action possess the same interest as the class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). Nevertheless, the court need not reach this issue because this case is moot.

*Pettrey*, 584 F.3d at 707.

But this case is different from *Pettrey*. There, unlike here, the class representatives had voluntarily settled their claims. That fact was significant to the *Pettrey* court: "This case . . . does not raise concerns about a defendant defeating a class action by 'picking off named plaintiffs.' . . . Such a concern would arise when a defendant attempts to eliminate the named plaintiffs at the outset of the class action by conveying an offer of judgment or settlement with

29

the named plaintiffs before or immediately after a class certification motion is filed, but this has plainly not happened here." *Id.* at 707. Moreover, the Sixth Circuit in *Pettrey* found remarkable that "no members of the putative class ha[d] come forward in an attempt to preserve the live nature of [the] controversy by being substituted as the named plaintiff." *Id.* That is also not the case here. So even if *Pettrey*'s dicta supports Defendants' position, those statements were made in a factual setting quite different from that of this case.

## 2.

Turning then to the rather unique factual setting before the Court, the Court finds that the relation-back exception to the mootness doctrine also applies in this Rule 23(a)(4) context. That is, in making the Rule 23(a)(4) determination, this Court will assume the posture of this case at the time Dozier, Luckhardt, and Mackay moved for class certification and sought a preliminary injunction.

The Court proceeds this way for two reasons. First, there is precedent applying a very-similar approach to a factually analogous situation. In *Fields v. Maram*, No. 04 C 0174, 2004 WL 1879997 (N.D. Ill. Aug. 17, 2004), six plaintiffs brought a class-action complaint asserting that the Illinois' Department of Public Aid refused to provide "medically necessary motorized wheelchairs to disabled nursing home residents receiving Medicaid" despite providing medically necessary motorized wheelchairs to disabled individuals living in the community. *Id.* at *1. The plaintiffs sought to enjoin this discriminatory policy. *Id.* at *6, *10. Only after the named plaintiffs moved for class certification did the Illinois' Department of Public Aid provide each of the six representatives with a motorized wheelchair. *Id.* at *1. In addressing Rule 23(a)(3)'s typicality requirement, the court reasoned that the relevant time period for examination was when the class representatives moved for certification:

> In circumstances such as this, where a governmental defendant provides a plaintiff a benefit after the plaintiff filed suit and sought class certification, courts have held that "class certification should be seen as 'relating back' to" the outset of the suit or the filing of the motion for class certification with the effect that issues such as the named plaintiff's membership in the class are addressed in terms of the circumstances that existed at that time the complaint or the motion for class certification were filed.

*Fields*, 2004 WL 1879997, at *8; *see also Richardson v. Monroe Cnty. Sheriff*, No. 1:08CV0174-RLY-JMS, 2008 WL 3084766, at *5 (S.D. Ind. Aug. 4, 2008) (finding that plaintiff who sued based on prison conditions, but was released from prison before a ruling on class certification, was still an adequate class representative under Rule 23(a)).

The situation that confronted the *Fields* court is similar to the one before this Court. Plaintiffs in this case sued claiming that Defendants used an unlawful process to phase out Plan First!. They did not explicitly seek to be enrolled in Healthy Michigan but instead challenged the Departments' phase-out procedure. This is similar to *Fields* in that the plaintiffs there did not explicitly seek to be granted a motorized wheelchair, but claimed that the manner in which the Illinois' Department of Public Aid determined who was eligible for a motorized wheelchair was discriminatory. Further, here, as in *Fields*, only after this suit was filed and a motion for class certification was pending, did the state agency provide the class representatives with a benefit that should have been provided but for the agency's allegedly unlawful policy.

The Court recognizes that *Fields* applied the relation-back doctrine to Rule 23(a)'s typicality requirement. But this distinction does not render *Fields* immaterial to the Rule 23(a)(4) inquiry. *See In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) ("Due to the intertwined nature of commonality, typicality, and adequate representation, we consider them together."); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) ("The adequate representation requirement overlaps with the typicality requirement

because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members.").

Second, applying *Fields* in this case makes sense from a practical perspective. If named plaintiffs with moot claims were per se inadequate class representatives, the *Sosna-Gerstein-Susman* exception would have little real-world effect on the outcome of a class action where, as here, the defendants moot both the class representatives' claims and the claims of those who sought to intervene as class representatives.

**3.**

Examining the state of affairs prior to when Defendants enrolled Dozier, Luckhardt, and Mackay in Healthy Michigan readily leads to a finding of adequate representation.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citations and internal quotation marks omitted). Rule 23(a)(4) demands the following: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (internal quotation marks omitted). This court should also "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id.* (internal quotation marks omitted).

Before Defendants mooted Plaintiffs' claims, Dozier, Luckhardt, and Mackay vigorously represented the proposed class. Plaintiffs' motions for class certification and preliminary relief,

filed before Defendants enrolled Plaintiffs in Healthy Michigan, are thorough and the arguments benefit the entire class—not simply Dozier, Mackay, or Luckhardt. *Cf. White v. Mathews*, 559 F.2d 852, 857 (2d Cir. 1977) (reasoning, where class action challenged the delays in receiving administrative hearings and class representative had received a hearing after filing motion to certify the class, that the court had been "fully apprised of the broad nature of the controversy well before [Plaintiff] received his hearing before the administrative law judge"). At the time Plaintiffs moved for certification, they had no conflicts of interest with the proposed class. And because Plaintiffs received June 7 Notices stating that they were denied coverage (or approved with a deductible), they were members of their proposed class as modified by the Court above. As for proposed class counsel, the Center for Civil Justice has prior experience in class litigation and successfully litigated a prior class action in this District based on similar facts and arguments. (Mot. for Class Cert. Ex. E, Hoort Resume; Mot. for Class Cert. Ex. F, Doig Resume.) *See also*, *Crawley v. Ahmed*, No. 08-14040, 2009 WL 1384147, at *14 (E.D. Mich. May 14, 2009) (appointing Doig as class counsel in action asserting wrongful termination of Medicaid benefits). The Court is satisfied with the Center's ability to represent the class.[4] Finally, whether Dozier, Luckhardt, and Mackay "[had] common interests with unnamed members of the class" is an issue discussed below in the context of the commonality and typicality requirements. It presently suffices to say that Plaintiffs, like members of the proposed class, had an interest in claiming that the June 7 notice they received was inadequate.

### 4.

Before turning to the remaining Rule 23(a) prerequisites, the Court adds that, in this case, a strict application of the relation-back doctrine is not necessary to conclude that Plaintiffs

---

[4] The Court likewise acknowledges the competent advocacy from the Michigan Department of Attorney General, Health, Education & Family Services Division.

adequately represented the class in pursuing the pending motions for certification and preliminary relief. *See Fields*, 2004 WL 1879997, at *11 ("[M]any courts have found a named plaintiff could be an adequate class representative after his or her individual claims were moot 'where it is unlikely that segments of the class . . . would have interests conflicting with those [the representative] has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding." (internal quotation marks omitted)); *cf. Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1044 (5th Cir. 1981) (reasoning, where defendants tendered to class representatives the full amount of their individual claims, that the class representatives remained adequate "for the narrow purpose now at issue, i.e., for the prosecution both of this appeal and of their pending motion for certification in the district court").

An examination of the briefs provided to the Court after Defendants mooted Plaintiffs' claims reveals that Plaintiffs continued to zealously advocate on the part of the class. (*See generally* Dkt. 27, Pls.' Reply to Defs.' Resp. to Mot. for Class Cert.; Dkt. 28, Pls.' Reply to Defs.' Resp. to Mot. for Prelim. Inj.) Indeed, although the Court has not found persuasive Plaintiffs' arguments that their individual claims are not moot, the fact that Plaintiffs pursued such arguments after being enrolled in Healthy Michigan suggests their strong desire to continue to participate in this litigation. Moreover, oral argument on the pending motions for certification and preliminary relief was held after Plaintiffs were enrolled in Healthy Michigan, yet, certification and preliminary relief for the entire class was central to Plaintiffs' arguments. As such, the Court believes that Plaintiffs' enrollment in Healthy Michigan has not significantly diminished their desire to see that the class receives adequate process prior to the expiration of the stipulated order temporarily extending Plan First! benefits.

* * *

In short, examining the context of how things stood prior to Plaintiffs' claims becoming moot, Dozier, Luckhardt, and Mackay were adequate class representatives. Moreover, even after Dozier's, Mackay's, and Luckhardt's individual, substantive claims became moot, they and their counsel continued to vigorously pursue the interests of the proposed class.[5]

## C.

Rule 23(a)(2) and 23(a)(3) will be addressed together: "Commonality and typicality 'tend to merge' because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (quoting *Dukes*, 131 S.Ct. at 2551 n. 5). Rule 23(a)(2)'s commonality requirement demands that class representatives show that they suffered the same injury as the proposed class members. *Dukes*, 131 S. Ct. at 2551. Further, the class members' claims must depend on a common contention "capable of classwide resolution—which means that determination of [the contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* A representative's claims are "typical" within the meaning of Rule 23(a)(3) if the defendant's conduct that gave rise to the representative's claims also gave rise to the class members' claims, and if the representative and class members seek to establish the defendant's liability "based on the same legal theory." *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 438 (6th Cir. 2009). Thus, "[a] necessary

---

[5] None of the foregoing is to say that Dozier, Mackay, or Luckhardt are adequate class representatives moving forward in this litigation. The Court holds only that they are adequate for purposes of class certification and injunctive relief.

consequence" of the typicality requirement is that, when the class representative pursues her own claims, she "also advance[s] the interests of the class members." *Young*, 693 F.3d at 542 (internal quotation marks omitted). For reasons provided, the Court will examine these requirements in the context of how things stood prior to Defendants mooting the individual claims of Dozier, Luckhardt, and Mackay.

Within that context, Plaintiffs have carried their burden of establishing that the facts giving rise to this lawsuit, and the legal claims based on those facts, satisfy the commonality and typicality requirements. Factually, Plaintiffs, like each member of the proposed class, were still enrolled in Plan First! when that program expired on June 30, 2014. And Plaintiffs, like each member of the proposed class, received a June 7 Notice providing that their coverage was denied, closed, or approved with a deductible. Legally, Plaintiffs claimed that the June 7 Notice was inadequate under the Medicaid Act, its implementing regulations, and the Due Process Clause. (Compl. ¶¶ 135–40, 142, 146–49.) The "determination of [this claim's] truth or falsity will resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *Dukes*, 131 S. Ct. at 2551. Moreover, in having pursued their claims that their June 7 Notices were inadequate, Plaintiffs necessarily "advance[d] the interests of the class members," each of whom, by definition, received a comparable June 7 Notice. *Young*, 693 F.3d at 542. Accordingly, Plaintiffs have shown that the facts and their legal claims satisfied the requirements of Rule 23(a)(2) and Rule 23(a)(3) at the time they moved for class certification and sought preliminary injunctive relief.

Defendants resist this conclusion. Regarding Rule 23(a)(2)'s commonality requirement, they say that "there is no common issue of law[,] . . . because separate determinations would be required to determine if proposed class members are Medicaid eligible." (Defs.' Resp. to Mot.

for Class Cert. at 15.) Similarly, Defendants assert that "there are no common factual questions" because "[e]ach Plan First! enrollee will need to be evaluated under their own individualized facts." (*Id.* at 16.)

Defendants' argument misses the mark. Individualized determinations do not necessarily defeat commonality. *See Young*, 693 F.3d at 543 (finding that district court did not abuse its discretion where the plaintiffs alleged a single theory of liability based on single practice of the defendants despite that the defendants had "some individualized defenses" against some class members but not others); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."). Rather, the question is whether there is at least one common question that, when answered, substantially advances the litigation. *See Dukes*, 131 S. Ct. at 2551; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("Although Rule 23(a)(2) speaks of 'questions' in the plural, we have said that there need only be one question common to the class. . . . What we are looking for is a common issue the resolution of which will advance the litigation."). When Plaintiffs moved for certification there was (and there still is) a common question that substantially advances the litigation: each member of the proposed class, as well as Plaintiffs, received a letter dated June 7, 2014 that did not provide any explanation for why the recipient did not qualify for Healthy Michigan. If, as Plaintiffs claimed, the Medicare Act or the Constitution required Defendants to provide that information, that legal determination would have significantly advanced the litigation.

Defendants further argue that Plaintiffs have not satisfied Rule 23(a)(3) because "the named Plaintiffs have not suffered the same injury as class members." (Defs.' Resp. to Mot. for

37

Class Cert. at 17.) Defendants explain that Dozier, Luckhardt, and Mackay are atypical from the women classified as Group A: "the named Plaintiffs submitted a full Medicaid application and were able to be processed for other programs, whereas [those in] Group A only filed a Plan First! application and could not be processed for other programs." (*Id.* at 17.)

This argument does not demonstrate that typicality was lacking when Plaintiffs sought certification. Defendants are correct that Dozier, Luckhardt, and Mackay completed their Medicaid-only applications during April and May 2014, and, as a result, the Departments then reviewed them for Healthy Michigan. Defendants are also correct that at least 32,000 proposed class members have only ever completed the limited Plan First! application and, thus, unlike Plaintiffs, have never been reviewed for Healthy Michigan. And the Court recognizes that these individuals have an interest in obtaining an ex parte review and adequate notice while Plaintiffs' primary interests may have been only the latter.

Still, when Plaintiffs filed their class-action complaint, they were operating under the belief that they had not received an ex parte review. (Compl. ¶¶ 55, 77, 100.) And nothing suggests that Plaintiffs subsequently became concerned only with the adequacy of the June 7 Notice.

In any event, in having pursued their inadequate-notice claim, Plaintiffs also "advance[d] the interests," *Young*, 693 F.3d at 542, of those class members who have not received an ex parte review. Plaintiffs argued that federal law required the June 7 Notice to explain why they did not qualify for the Healthy Michigan program. As relief, Plaintiffs requested that the Departments provide each proposed class member with an individualized explanation for being denied Healthy Michigan coverage. (*See* Compl. ¶¶ 136, 138, 150.G.) But to provide this explanation, Defendants must first have something to explain. In other words, the Departments would first

have to determine why each Plan First! enrollee was ineligible for Medicaid coverage. Thus, having sought an individualized explanation for each class member, Plaintiffs also sought individualized review. As such, the Court finds that Dozier's, Mackay's, and Luckhardt's claim was typical of the claims of the proposed class when they moved for class certification and preliminary relief. *See Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) ("Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each []other or to every class member."); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976) ("To be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.").

Accordingly, the Court finds that Plaintiffs and their proposed class satisfied the requirements of Rule 23(a)(2) and (a)(3).

### D.

Although Defendants try (Defs.' Resp. to Mot. for Class Cert. at 12–15), numerosity cannot be seriously disputed. The parties agree that there were tens-of-thousands of women who received the June 7 Notice. Indeed, Defendants acknowledge that the stipulated order temporarily extending Plan First! benefits to those who were still enrolled in that program as of June 30, 2014, covers at least 32,000 women. Joinder is thus "impracticable." Fed. R. Civ. P. 23(a)(1).

### E.

Plaintiffs, having met the Rule 23(a) prerequisites, must still demonstrate that, at the time they sought certification, their proposed class fell within one of the categories contemplated by Rule 23(b). Plaintiffs say their proposal fit within Rule 23(b)(2). The Court agrees.

Federal Rule of Civil Procedure 23(b)(2) provides, "A class action may be maintained if Rule 23(a) is satisfied and if[] . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The "key" to a Rule 23(b)(2) class "is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, ---, 131 S. Ct. 2541, 2557, 180 L. Ed. 2d 374 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Or, stated slightly differently, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.* at 2557.

At the time Plaintiffs sought certification and injunctive relief, their proposed class fit within the category defined by Rule 23(b)(2). As suggested in the context of analyzing typicality and commonality, this Court could have provided relief to the entire class through a single, final injunctive order. In particular, the Court could have, as a final order in this case, directed the Departments to send notices to each person to whom the Departments sent a June 7 Notice stating that the recipient's coverage was denied, closed, or approved with a deductible. The order would have directed that the notices inform the recipient that the Departments conducted a review of the recipient's file. The notices would have also been required to, among other things, (a) inform the recipient that she has been enrolled in Healthy Michigan, or (b) provide an individualized explanation for the recipient's ineligibility for Healthy Michigan. Indeed, the

40

viability of this order is evidenced by the similarly worded preliminary injunction entered contemporaneously with this opinion and order.

Defendants' arguments that the proposed class falls outside of the scope of Rule 23(b)(2) are not persuasive. Defendants first say that Rule 23(b)(2) demands that the Departments' actions toward the class be part of "'a pattern of activity'" or a "'regulatory scheme common to all class members.'" (Defs.' Resp. to Mot. for Class Cert. at 19 (quoting *Lawson v. Wainwright*, 108 F.R.D. 450, 457 (S.D. Fla. 1986).) They maintain that Plaintiffs have not met this test because the "members of the proposed class are neither uniformly treated nor uniformly injured, and some have not been injured at all." (*Id.*)

The Court disagrees with Defendants' premise. Members of the proposed class have been "uniformly injured" by the same "uniform[] treat[ment]": the Departments sent each proposed class member the June 7 Notice, and each maintains that the June 7 Notice is deficient under federal law. Moreover, because the Departments sent allegedly deficient notices to each proposed class member, the Departments conduct is properly considered "a pattern of activity."

Defendants also argue that "the relief requested is not appropriate to the class as a whole." (Defs.' Resp. to Mot. for Class Cert. at 19.) In support of this assertion, Defendants argue the merits: that due process does not require notice greater than that already provided, and that the Departments were not required to conduct an ex parte review of Plan First! enrollees prior to terminating that program. (*Id.* at 19.) But for Rule 23(b)(2) purposes, the question is not whether Plaintiffs were entitled to relief on the merits; the question is whether the relief Plaintiffs requested would have been appropriate for the entire class. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) ("Respondents' contentions miss the point of Rule 23(b)(2). . . . The rule does not require us to examine the viability or bases of class members' claims for

41

declaratory and injunctive relief, but only to look at whether class members *seek* uniform relief from a practice applicable to all of them." (emphasis added) (internal citation omitted) (internal quotation marks omitted)); *Fields v. Maram*, No. 04 C 0174, 2004 WL 1879997, at *12 (N.D. Ill. Aug. 17, 2004) ("Because Plaintiffs have alleged and presented evidence that Defendant has refused to act on grounds generally applicable to the class (i.e., that Defendant has refused to provide motorized wheelchairs to disabled nursing home residents receiving Medicaid) and final injunctive or corresponding declaratory relief with respect to the class as a whole may be appropriate *if Plaintiffs can ultimately prove their claims*, certification is proper under Rule 23(b)(2)." (emphasis added)).

Accordingly, at the time Plaintiffs sought certification, their proposed class (as subsequently modified by the Court) fell within the type of class actions contemplated by Rule 23(b)(2).

## IV.

For the foregoing reasons, the Court hereby ORDERS as follows:

For purposes of deciding Plaintiffs' motion for preliminary injunction only, the Court CERTIFIES the following class:

> All individuals to whom the Michigan Department of Human Services or the Michigan Department of Community Health sent a notice dated June 7, 2014, stating, (1) "You are receiving this notice because you are enrolled in the Plan First! family planning program. This program will end June 30, 2014" and (2) that, effective July 1, 2014, health coverage would be denied, closed, or approved with a deductible.

The Court further appoints Katie Linehan, Jacqueline Doig, and the Center for Civil Justice as class counsel. The Court makes no finding as to the viability of this class beyond adjudication of Plaintiffs' motion for preliminary relief. Plaintiffs' "Motion for Immediate Class Certification" (Dkt. 2) is GRANTED IN PART consistent with this opinion and order. Dozier's, Luckhardt's,

and Mackay's individual, substantive claims are moot and are DISMISSED for lack of subject-matter jurisdiction.

      SO ORDERED.


                         s/Laurie J. Michelson
                         LAURIE J. MICHELSON
                         UNITED STATES DISTRICT JUDGE

Dated:  October 29, 2014


                       CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 29, 2014.

                         s/Jane Johnson
                         Case Manager to
                         Honorable Laurie J. Michelson